IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PARRISH A. HARRIS,

    Petitioner,

v.                                                 CASE NO. 1:04-cv-00022-MP-AK

FLORIDA PAROLE COMMISSION, et al.,

    Respondents.

_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, filed by Parrish A. Harris. The Florida Parole Commission was allowed to intervene, Doc. 12, and the Respondent Secretary of the Department of Corrections has deferred to it for response. Doc. 13. Thereafter, the Commission responded to the petition, Doc. 16, and Petitioner has filed his reply. Docs. 17 & 18. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be granted unless the Commission affords Petitioner a new final revocation hearing.

## **BACKGROUND**

Though the petitioner, Parrish A. Harris, has a significant criminal history in the State of Florida, Doc. 16, Ex. A, his pertinent history begins on July 5, 1991, when he was released from prison to control release supervision subject to certain terms and conditions until July 8, 1993. Doc. 16, Ex. C. Approximately one month after his release, in August, 1991, Petitioner

committed five armed robberies and an aggravated assault. Doc. 16, Ex. B. Petitioner pled *nolo contendre* to each count, and on April 13, 1992, he was sentenced to twenty years imprisonment on each count of armed robbery and five years on the aggravated assault count, with the sentences to run concurrently. *Id.*

On November 19, 2000, Petitioner was again released from prison to control release supervision, subject to terms and conditions until July 26, 2011. Doc. 16, Ex. D. On or about July 3, 2001, Petitioner's Conditional Release Officer requested the issuance of a warrant for Petitioner's arrest, alleging Petitioner violated Condition Seven of his control release, by committing an aggravated battery upon a pregnant woman. Doc. 16, Ex. E. The Violation Report stated:

> On 7-1-01 Det. Kelly met with victim, Jessica Torrance age 23 who state she has been living with subject for past couple of months. She stated that yesterday, they went to subject's uncle's home...and while there she was battered. She advised that we then returned from dinner subject called her to watch a pornographic film with him. As she went outside subject grabbed her and pulled her down on the floor and removed her pants and underwear while she told him no. She tried to stand and he again pulled her down. When she attempted to resist him, he pulled her hair and head to the floor while tightly gripping her wrist. He continued to force sexual intercourse upon her. After a few minutes he asked if she wanted to stop and she said yes. He then followed her outside and asked why she didn't want to have sex with him. He then got angry and choked her, head butted, and twisted her wrist. He then brought her back into the house and continued abusing her. She got away from him and ran down the road. She stated she did not wish to press charges for sexual battery. She had a scratch on her neck, bruises along her jaw line and a bruise on her right thigh. It should be noted subject was aware of victim's pregnancy.

*Id.* The Violation Report was based on the Vero Beach Police Departments Offense Incident Report dated July1, 2001. Doc. 16, Ex. F. The Offense Incident Report consisted of a police investigation into the victim's allegations of assault, a victim's statement, the investigating

officer's observations, an arrest affidavit, and a narrative sheet dated July 3, 2001. *Id.*

Within days, the victim submitted a letter to the Public Defender's Office requesting that the charges be dropped against Petitioner. Doc. 16, Ex. G. In her letter attempting to "set the record straight," the victim, who claimed her statement to police had been given under duress and the influence of alcohol, explained:

> Parrish and I attempted to relocate to Vero Beach on June 14, 2001. We were very low on money, my car had to be left in Tallahassee with transmission problems. Our rent was $200.00 per week. Parrish was taking his medicine approximately every three days to make his medicine last longer. The day of the incident I had slipped on the floor at work, they also had just found out of my pregnancy, and fired me on the spot. I got a ride from a co-worker home that day. Parrish was not too happy with me getting a ride home from a co-worker, but it was the added financial pressure of me being fired from a job that we needed the income from that got us arguing. There was no choking involved as I said in my statement. I didn't say I was raped, but Det. Kelly wrote it up that way. That too is an incorrect part of my statement. We did have consensual rough sex that night which was reflected in the statement as being choked, but the chocking incident was not true. There was NO rape, there was NO choking, and there was only a heated argument under the influence of alcohol. I feel terrible for exaggerating the story I told and what my incorrect statements has done to Parrish, and I want to set the record straight as to what happened that night. I was mad, hurt, scared, panicked, and very angry. We did have an argument but NO domestic violence occurred. I also felt pushed and intimidated by Detective Kelly. I told him repeatedly that I did not want to press charges.

*Id.*

Subsequently, the State made an independent and discretionary determination to file a "No Information." Doc. 16, Ex. H.

On July 27, 2001, the Florida Parole Commission issued a Warrant for Retaking Conditional Releasee. Doc. 16, Ex. I. The warrant charged that Petitioner violated Condition Seven of his conditional release by failing to obey all laws, ordinances, or statutory conditions of Conditional Release in that on or about "July 1, 2001, in Indian River County, Florida, he did

unlawfully and intentionally touch, strike or cause bodily harm to Jessica Torrance, against her will, when he knew or should have known that the victim was pregnant." *Id.*

Thereafter, the Commission provided Petitioner with a copy of the Notice of Hearing on Conditional/Control Release Violation document. Doc. 16 Ex. J. The document detailed the violation with which Petitioner was charged and advised him of his rights at the violation hearing. *Id.* The Notice of Rights document informed Petitioner that he was entitled (1) to appear and speak at the hearing and present documents, (2) to present evidence, obtain witnesses, and request subpoenas, (3) to have the evidence to be used against him disclosed prior to hearing, (4) to examine evidence and confront and cross-examine witnesses, and (5) to be represented by counsel and possibly to the appointment of counsel. Petitioner retained private counsel, Victoria Bush, and requested a final violation hearing. *Id.*; Doc. 16, Ex. K.

The revocation hearing was conducted on November 9, 2001, and November 21,21001. Doc. 16, Ex. K. At the hearing, counsel for Petitioner objected to Officer McFarland's testimony because he had not been listed as a witness, Doc. 17, Ex. B at 97 & 112,[1] and she also objected to photographs taken of the victim because they had not been disclosed prior to the hearing and because the photographer was not present to authenticate them. *Id*. at 108. At the conclusion of the hearing, the Hearing Examiner found Petitioner guilty of the charged violation. Doc. 16, Ex, K. According to the Examiner, his finding was based on a review of the victim's handwritten

---

[1]As part of his reply, Petitioner submitted photographs of the victim and what appear to be the documents originally attached to his state court habeas petition, attachments which the Commission did not provide to the Court. Doc. 18. For clarity, the Court has physically labeled the photographs as "Exhibit A" and the state court habeas petition with attachments as "Exhibit B." The page numbers to which the Court refers are located on the lower right hand corners of the documents and were placed there by someone other than this Court.

and videotaped statements and the testimony of the police officers who responded to the 911 call and witnessed the victim's statements, including Officer McFarland. *Id.* He also noted that Petitioner's attorney had objected to the videotape and to "the use of color photographs taken of the Victim because the photographer...had not been subpoenaed and was not present to properly introduce them." *Id*. He did not advise the Commission that counsel had also objected to the photographs based on the failure to disclose them to her prior to the hearing, and he made no mention whatsoever of her objection to Officer McFarland's testimony, which, as previously noted, was also based on a failure to disclose.

The parole examiner included with his findings an interoffice memorandum to the Commission expressing his concern about the inconsistencies in the evidence presented and the overall manner in which the revocation hearing took place. *Id.* He prefaced his letter with the following: "In case this fact is not evident after reading the report of the Hearing, I wanted to bring to the Commission's attention that this was a <u>very 'messy' Hearing</u>." *Id*. (emphasis in original). He then gave the Commission "some examples":

> It was confirmed that both the Releasee and the Victim are bi-polar and were not taking medication at the time of the alleged incident. The Victim reported a complex story–over a period of approximately five hours with the police--of physical and sexual abuse, as well as threatening statements at the hands of the Releasee. She subsequently recanted her charges, explaining that her injuries were from consensual (sado-masochistic) sex with the Releasee. In an affidavit to the Public Defender and State Attorney, she accused the arresting officer of lying in his probable cause affidavit, then admitted during the Hearing that everything in his report was true, based on what she had told him. The Victim's father testified that his daughter, while under stress, can get wild and vicious in a conflict and is capable of complex lies.

*Id*. He nevertheless concluded: "While--in my opinion--there was evidence to establish probable cause, there was other evidence raising reasonable doubt. There is no question as to

why the State elected to file an announcement of No Information on the criminal case." Id.

Thereafter, the Commission issued an order of revocation of Petitioner's conditional release, Doc. 16, Ex. L, and later an Amended Order on July 10, 2002, which only changed some coding on the dates for credit for time served. Doc. 16, Ex. M.

Petitioner then filed a petition for writ of habeas corpus in state court, arguing that his conditional parole was erroneously revoked on two grounds. Doc. 16, Ex. N. First, Petitioner argued that the Commission rendered its final decision by relying on an insufficient and unreliable record of the hearing proceedings. *Id*. Second, Petitioner charged that he was not given the opportunity to mitigate or provided prior notice of certain evidence offered at the revocation hearing, including the photographs of the victim. *Id.* According to Petitioner, if he had been given prior notice of the photographs, he "could have had Dr. Ruedig Lindner testify in support of his medical findings as to alleged injuries or emotional morbidity...." *Id*. He also argued that he "forfeited his right to argue against Officer McFarland's testimony...because it was not included during the hearing process which the Commission was misinformed as to the evidence relied upon and findings included (2) police officer's testimonies as opposed to only Det. Kelly's."[2] *Id*. For these reasons, Petitioner claimed the Commission abused its discretion during adjudication. *Id*. He prefaced his arguments with a citation to *Morrissey v. Brewer*, 408 U.S. 471 (1972), which is, of course, the seminal case on due process in revocation proceedings, and also cited various state court and administrative rules and decisions.

---

[2]Petitioner is apparently referring here to the fact that at the conclusion of the hearing, the Examiner orally advised that his finding of guilt was based only on the testimony of Officer Kelly and the videotaped interview of the victim. Doc. 18, Ex. B at 244.

Subsequently, the state court denied habeas relief, finding no abuse of discretion. Doc. 16, Ex. O.

Petitioner next filed a petition for writ of certiorari in the court of appeal, arguing that the lower court's habeas ruling was a "departure from the essential requirements of law resulting in a miscarriage of justice." Doc. 16, Ex. P. In pertinent part, Petitioner maintained that he was denied due process in several regards. First, he claimed that he was denied his right to be heard in person and to confront and cross-examine adverse witnesses and was not notified prior to the hearing of witnesses and evidence to be used against him. *Id.* More specifically, Petitioner claimed that the failure to disclose Officer McFarland as a witness and to provide prior notice of the photographs of the victim used in the revocation hearing resulted in a violation of due process and of the Commission's rules. *Id.* Second, he claimed the hearing officer improperly included in his summary matters outside the record to which Petitioner had not stipulated, including an *ex parte* communication with Detective Kelly about "petechia" and a taped interview of Petitioner by Detective Kelly. *Id.* Finally, he argued that he was denied due process when his entire testimony was omitted from the Summary of the Hearing Report submitted to the Commission for consideration. *Id.* He again cited *Morrissey* and state court decisions and administrative rules.

Thereafter, the court issued an order to show cause to the Commission, Doc. 16, Ex. Q, which filed a response. Doc. 16, Ex. R. The court denied Petitioner relief without written opinion. Doc. 16, Ex. S.

The instant petition for writ of habeas corpus ensued. Doc. 1. On this occasion, Petitioner has brought forward from state court his arguments regarding due process, while

elaborating on his contention regarding the failures of the Examiner's summary of the hearing. *Id*. Although the due process arguments are almost identical to those made in state court, Petitioner does not cite *Morrissey* but instead cites only to the Florida Administrative Rules.

In response, the Commission, of course, attacks the petition for this failure and claims that it only raises state law issues and "has not raised any issues of federal constitutional dimension." Doc. 16. It nevertheless addressed the *Morrissey* due process issues and the appropriate standard of review for this Court, emphasizing Petitioner's failure to argue and prove that the state court's decision is a "contrary or unreasonable application of federal law" and characterizing this case as merely "another attempt by Petitioner to find a sympathetic court." *Id.*

In reply, Petitioner maintains that Respondent "misconstrued" his claims, arguing that he was indeed claiming a violation of his federal due process rights pursuant to *Morrissey* and that the state court failed to address that claim. Doc. 17.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. An "unreasonable application" may also occur if the state court unreasonably extends or unreasonably declines to extend a legal principle from Supreme Court precedent to a new context. *Maharaj v. Secretary for Department of Corrections*, 432 F.3d 1292, 1309 (11th Cir. 2005). The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The fact that the state court did not write "an opinion that explains the state court's

rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from

state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c).  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  *See also White v. State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.  A respondent's failure to raise exhaustion does not constitute a waiver, since "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(b)(3);  *McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005); *Dill v. Holt,* 371 F.3d 1301, 1302 n.1 (11th Cir. 2004).

Respondent first claims that Petitioner failed to state a claim of constitutional dimension, and that his use of the phrase "due process" does not save his petition from that flaw.  While it is true that a habeas petitioner's use of a  generic constitutional phrase will not transform a purely state law claim into a federal constitutional issue, the Court is not confronted with that pleading deficiency here.  The law regarding the due process accorded to a parolee or probationer in a revocation proceeding is clearly established in certain particulars.  For example, the following minimum requirements of due process must be provided:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and

> to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972). In this case, Petitioner's first "Violation of Due Process" is that he "was denied his due process right to be given written notice of the photos of the victim used in the violation hearing." Doc. 1 at 5A. This allegation certainly sets forth a violation of the second *Morrissey* requirement, "disclosure to the parolee of evidence against him." While Petitioner's claim that he was denied prior notice of the photographs does indeed set forth violations of state law and the Notice of Rights as well, *see* Fla. Stat. Ann. § 947.141(3) (if releasee elects to proceed with final revocation hearing, he must be informed of his "right of access to all evidence used against the releasee and to confront and cross-examine adverse witnesses"); Doc. 16, Ex. J ("You are entitled to have evidence that will be presented at the violation hearing disclosed to you prior to the hearing"), that fact does not convert his initial due process claim into one which arises purely under state law.

This analysis applies equally to Petitioner's second due process claim that he was denied his "due process right to be given written notice that Officer McFarland was going to be called as a witness." Doc. 1 at 5B.

In his third due process claim, Petitioner maintains that the Hearing Examiner "violated his due process rights to a full and fair hearing and his right to a neutral and detached hearing body when [he] engaged in improper ex parte communications" with

Detective Kelly and Nancy Johansen.  This allegation tracks the fifth *Morrissey* requirement, a "'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers," but it also implicates the fourth requirement, "the right to confront and cross-examine adverse witnesses."

Encompassed within his third claim and extending through the fifteenth claim, Petitioner maintains that the "summary report of the hearing violated Petitioner's Due process...."  In this claim, Petitioner challenges not only matters improperly included in the report, such as the testimony of Officer McFarland, the *ex parte* statements of Detective Kelly, and a summary of an audiotape interview between Petitioner and Detective Kelly which was not submitted into evidence, but also matters absent from the report which were exculpatory, including the victim's drug use on the night of the incident.  Doc. 1 at 5B-5F.  These allegations address the last *Morrissey* requirement of "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

In sum, although Petitioner did not cite the United States Constitution, *Morrissey*, or any other federal case law, he has plainly alleged violations of federal due process, not claims founded merely on state law.[3]

The Court thus turns to whether the state court adjudication resulted in a decision (1) that was contrary to or involved an unreasonable application of clearly established

---

[3]Indeed, if the Court had been concerned that Petitioner had not asserted a violation of the United States Constitution, it would have ordered Petitioner to amend his petition before it was ever served.

Supreme Court law or (2) that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  In that regard, the Court has no hesitation in finding that the state court's ruling is indeed contrary to *Morrissey*, and it need look no further than Petitioner's first claim for support for that conclusion.  While *Morrissey* is clear that the disclosure to the parolee of the evidence against him is one of the "minimal requirements for due process" in the revocation context--and it is upon *Morrissey* that this Court relies--it has nevertheless looked to other courts for support in its decision.

In *United States v. Taylor*, 540 F.2d 1156 (2nd Cir. 1976), the parole officer testified at the revocation hearing concerning various allegations contained in documents in the parolee's files.  The documents themselves were not shown to the parolee "who had to rely upon [the officer's] summaries in fashioning his responses."  *Taylor*, 540 F.2d at 1158.  The court began with *Morrissey*, noting that its minimum due process requirements

> are designed to further a variety of specific but vital objectives:  (1) minimization of surprise so that the parolee may formulate and organize a coherent and complete defense; (2) the opportunity directly (and thus more effectively) to challenge witnesses speaking against him; and (3) objective decisionmaking based on an accurate account of the parolee's conduct.

*Taylor*, 540 F.2d at 1159.  It then found that the "refusal to provide the parolee with access to the actual documents employed against him, without a showing of good cause for such secrecy, is impermissible."  *Id*. at 1161.  The court stated:

> A parolee must be afforded the opportunity for effective rebuttal of allegations against him.  Although a formal hearing and formalized cross-

> examination are not necessary, the Supreme Court recognized in *Morrissey* that no one's interest, neither the public's nor the parolee's, is fostered by exposing a parolee to a substantial risk of recommitment upon the basis of erroneous impressions or conclusions grounded on innuendo or exaggeration, as distinguished from "verified facts."

*Id*. The court continued:

> Assuming that a revocation decision may turn upon...impressionistic conclusions, it becomes all the more important to provide advance disclosure of the documentary proof upon which it is based in order to safeguard against the Board's substitution of rumor, exaggeration, or faulty characterizations concerning the parolee's conduct for facts. The due process requirements of *Morrissey* are designed to minimize just such a risk.

*Id*. at 1162. Thus,

> due process requires that the parolee be afforded access to the documents that will be introduced against him, unless the Parole Board meets the burden of establishing good cause for their nondisclosure, e.g., that disclosure will lead to reprisals or substantially interfere with a pending criminal investigation involving an allegation contained in the documentary record.

*Id*. at 1163.

Similarly, in *In re Love*, 520 P.2d 713 (Cal. 1974), the parolee was denied access to a special confidential report relating to the alleged parole violations which had been prepared by a parole officer but was not used in the revocation determination. *Id*. at 715. The court found:

> This is the very type of document, absent a privilege not to disclose, which should have been made available to petitioner. The fact that the document was not relied on by the Authority in the decisional process is irrelevant. The document might have contained material which would have tended to exonerate petitioner, or it might have enabled petitioner to better prepare a defense and assert matters in mitigation. The subsequent nonuse of the document does not insulate it from disclosure, as to so hold would allow the Authority to withhold documents helpful to a parolee

  simply by not using them in the decisional process.

*Id*. at 716.  Thus, "irrespective of the fact that the report was not used by the Authority in reaching its decision to revoke parole, petitioner had a right as a matter of due process to its disclosure." *Id*.  It therefore ordered a new revocation hearing "prior to which a copy of the report must be provided." *Id*.  See also *Belk v. Purkett*, 15 F.3d 803, (8th Cir. 1994) (court found petitioner's due process rights violated during revocation proceeding where, *inter alia*, evidence against him, including victim's written statement and police report, was not disclosed).

  Respondent does not argue, as indeed it cannot, that Petitioner is mistaken in his allegation that the photographs of the victim were not disclosed to him.  The record is clear that counsel objected to their consideration not only because they could not be authenticated by the photographer but also because they were not disclosed prior to the hearing.  It is the failure to disclose the photographs which constitutes the *Morrissey* violation here, a failure about which the Hearing Examiner did not even apprise the Commission.  Certainly, then, the summary of the violation hearing is inadequate because it failed to alert the Commission to the obvious due process violation at hand, and thus, without that knowledge, the Commission could not fairly review whether revocation was appropriate.

  While there is no indication in the Hearing Examiner's "Findings and Evidence Relied Upon" that he considered the photographs in reaching his decision, the failure to disclose evidence against a petitioner is more than a mere technical violation of *Morrissey*.  It is a direct violation of the second minimal requirement for the protection of

a releasee's due process rights set forth in *Morrissey*, and the state court's affirmance of the Commission's revocation in this case is plainly contrary to the mandates of the United States Supreme Court.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus, Doc. 1, be **GRANTED** unless the Florida Parole Commission conducts a new final revocation hearing within 30 days after the adoption of the Report and Recommendation.

**IN CHAMBERS** at Gainesville, Florida, this **13th** day of October, 2006.

<pre>
s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE
</pre>

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.