IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


PARRISH A HARRIS,

    Petitioner,

v.                                                      CASE NO. 1:04-cv-00022-MP-AK

JAMES CROSBY, JR,
et al.,

    Respondents.

_____/

**O R D E R**

This matter is before the Court on Doc. 21, Report and Recommendations of the Magistrate Judge, recommending that the Petition for Writ of Habeas Corpus, Doc. 1, be granted, and that unless the Florida Parole Commission conducts a new final revocation hearing within 30 days after the adoption of the Report and Recommendation, the Petitioner be released.  The Respondents filed objections, doc. 22, to which the Petitioner responded, doc. 23.  Pursuant to Title 28, United States Code, Section 636(b)(1), this Court has made a *de novo* review of those portions to which an objection has been made.  Having considered the Report and Recommendation and objections and responses thereto filed, the Court determines that the Report and Recommendation should be rejected and the habeas petition denied.

As set out more fully in the Report and Recommendation, Petitioner has been imprisoned several times, released several times and has been accused of violating his terms of release several times.  On November 19, 2000, Petitioner -- who was then serving a sentence for five armed robberies -- was again released from prison to control release supervision, subject to terms and conditions that would apply until July 26, 2011.  Doc. 16, Ex. D.  On or about July 3, 2001,

however, Petitioner's Conditional Release Officer requested the issuance of a warrant for Petitioner's arrest, alleging Petitioner violated Condition Seven of his control release, by committing an aggravated battery upon a pregnant woman. Doc. 16, Ex. E.

> The Violation Report stated:
>
> On 7-1-01 Det. Kelly met with victim, Jessica Torrance age 23 who state she has been living with subject for past couple of months. She stated that yesterday, they went to subject's uncle's home...and while there she was battered. She advised that we then returned from dinner subject called her to watch a pornographic film with him. As she went outside subject grabbed her and pulled her down on the floor and removed her pants and underwear while she told him no. She tried to stand and he again pulled her down. When she attempted to resist him, he pulled her hair and head to the floor while tightly gripping her wrist. He continued to force sexual intercourse upon her. After a few minutes he asked if she wanted to stop and she said yes. He then followed her outside and asked why she didn't want to have sex with him. He then got angry and choked her, head butted, and twisted her wrist. He then brought her back into the house and continued abusing her. She got away from him and ran down the road. She stated she did not wish to press charges for sexual battery. She had a scratch on her neck, bruises along her jaw line and a bruise on her right thigh. It should be noted subject was aware of victim's pregnancy. Id.

The Violation Report was based on the Vero Beach Police Departments Offense Incident Report dated July1, 2001. Doc. 16, Ex. F.  The Offense Incident Report consisted of a police investigation into the victim's allegations of assault, a victim's statement, the investigating officer's observations, an arrest affidavit, and a narrative sheet dated July 3, 2001. Id.

Within days, however, the victim submitted a letter to the Public Defender's Office requesting that the charges be dropped against Petitioner. Doc. 16, Ex. G.  In her letter attempting to "set the record straight," the victim, who claimed her statement to police had been given under duress and the influence of alcohol, explained:

> Parrish and I attempted to relocate to Vero Beach on June 14, 2001. We were very low on money, my car had to be left in Tallahassee with transmission problems.

> Our rent was $200.00 per week. Parrish was taking his medicine approximately every three days to make his medicine last longer. The day of the incident I had slipped on the floor at work, they also had just found out of my pregnancy, and fired me on the spot. I got a ride from a co-worker home that day. Parrish was not too happy with me getting a ride home from a co-worker, but it was the added financial pressure of me being fired from a job that we needed the income from that got us arguing. There was no choking involved as I said in my statement. I didn't say I was raped, but Det. Kelly wrote it up that way. That too is an incorrect part of my statement. We did have consensual rough sex that night which was reflected in the statement as being choked, but the chocking incident was not true. There was NO rape, there was NO choking, and there was only a heated argument under the influence of alcohol. I feel terrible for exaggerating the story I told and what my incorrect statements has done to Parrish, and I want to set the record straight as to what happened that night. I was mad, hurt, scared, panicked, and very angry. We did have an argument but NO domestic violence occurred. I also felt pushed and intimidated by Detective Kelly. I told him repeatedly that I did not want to press charges.

Id. Subsequently, the State made an independent and discretionary determination to file a "No Information." Doc. 16, Ex. H.

Nevertheless, on July 27, 2001, the Florida Parole Commission issued a Warrant for Retaking Conditional Releasee. Doc. 16, Ex. I.  The warrant charged that Petitioner violated Condition Seven of his conditional release by failing to obey all laws, ordinances, or statutory conditions of Conditional Release in that on or about  "July 1, 2001, in Indian River County, Florida, he did unlawfully and intentionally touch, strike or cause bodily harm to Jessica Torrance, against her will, when he knew or should have known that the victim was pregnant." Id.

Thereafter, the Commission provided Petitioner with a copy of the Notice of Hearing on Conditional/Control Release Violation document. Doc. 16 Ex. J. The document detailed the violation with which Petitioner was charged and advised him of his rights at the violation hearing. Id. The Notice of Rights document informed Petitioner that he was entitled (1) to appear

and speak at the hearing and present documents, (2) to present evidence, obtain witnesses, and request subpoenas, (3) to have the evidence to be used against him disclosed prior to hearing, (4) to examine evidence and confront and cross-examine witnesses, and (5) to be represented by counsel and possibly to the appointment of counsel.

Petitioner retained private counsel, Victoria Bush, and requested a final violation hearing. Id.; Doc. 16, Ex. K.  She did not request any evidence to be disclosed, however, prior to the hearing.  The revocation hearing was conducted on November 9, 2001, and November 21, 2001. Doc. 16, Ex. K. At the hearing, counsel for Petitioner objected to Officer McFarland's testimony because he had not been listed as a witness, Doc. 17, Ex. B at 97 & 112,1 and she also objected to photographs taken of the victim because they had not been disclosed prior to the hearing and because the photographer was not present to authenticate them. Id. at 108. At the conclusion of the hearing, the Hearing Examiner found Petitioner guilty of the charged violation. Doc. 16, Ex, K. According to the Examiner, his finding was based on a review of the victim's handwritten and videotaped statements and the testimony of the police officers who responded to the 911 call and witnessed the victim's statements, including Officer McFarland. Id. He also noted that Petitioner's attorney had objected to the videotape and to "the use of color photographs taken of the Victim because the photographer...had not been subpoenaed and was not present to properly introduce them." Id. He did not advise the Commission that counsel had also objected to the photographs based on the failure to disclose them to her prior to the hearing, and he made no mention whatsoever of her objection to Officer McFarland's testimony, which, as previously noted, was also based on a failure to disclose.

Petitioner now brings a habeas petition arguing that the use of the photographs and the

testimony of Officer McFarland without prior disclosure of that evidence constituted a due process violation.

The law regarding the due process accorded to a parolee or probationer in a revocation proceeding is clearly established in certain particulars. For example, the following minimum requirements of due process must be provided: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972).

Although the Florida Administrative Code requires disclosure of evidence against a probationer *prior* to the hearing, Morrissey itself, and the majority of the cases interpreting Morrissey, do not so require.  Morrissey simply requires "disclosure to the parolee of evidence against him".  Id.  "Morrissey does not require disclosure to the parolee in writing of the evidence to be used against him" Baker v. Wainwright, 527 F.2d 372, 379 (C.A. 5th Cir. 1976). At least one Judge of the Eleventh Circuit concludes that a Probationer "had no right to be informed, in advance of the hearing, of the evidence against him" Gholston v. Jones, 848 F.2d 1156, 1162 n.4 (C.A. 11th Cir. 1988) (Edmondson, J., dissenting; cited for proposition not contradicted by majority opinion - which held that parolee not being told about most crucial piece of evidence until after he waived right to counsel and to present witnesses, did not

necessarily violate right to confrontation, Gholston, at 1161 [maj. op.]).  In support of the assertion that Morrissey does require advance notification, the Magistrate Judge cites: United States v. Taylor, 540 F.2d 1156 (2nd Cir. 1976), In re Love, 520 P.2d 713 (Cal. 1974), and Belk v. Purkett, 15 F.3d 803, (8th Cir. 1994), however, all of these cases deal with instances in which parolees requested the evidence be disclosed to them prior to the hearing ; Petitioner made no such request.

The danger Morrissey intends to avoid is a probationer being sent back to prison without having any idea what evidence was used to convince the hearing officer to return him to prison. Morrissey, however, was not intended to raise the due process required for a revocation hearing to the same level as that for a criminal trial.  This accords with the view that "[the] rule relating to disclosure is simply intended to assure that at the revocation hearing the probationer is confronted with all of the evidence upon which any decision to revoke could be based." Com. v. Quinlan, 380 A.2d 854, 857 (Pa. Super. 1977) (rejecting appellant's argument that Morrissey entitled him to have evidence against him disclosed before revocation hearing).  In fact, even courts seeming to indicate a preference for prior disclosure have found that failure to do so does "not give rise to constitutional error."  Barton v. Malley, 626, F.2d 151, 158 (C.A. 10th Cir. 1980) (no constitutional error where evidence was not disclosed to parolee prior to hearing).

The Court finds that Morrissey and its progeny do not require the evidence to be used at a revocation hearing to be disclosed prior to the hearing.  Therefore, the state decisions in this case upholding the revocation cannot be deemed  "contrary to, or ...  an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Williams v. Taylor, 529 U.S. 362,

412-13 (2000).  Therefore, federal habeas relief is not proper in this case.

Also, as the Magistrate Judge points out, a habeas petition grounded on issues of state law alone provides no basis for federal habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989).  Thus, the fact that the Florida Administrative Code may require more process during revocation hearings than Morrissey is of no import to the instant lawsuit; Petitioner would be asserting solely state law claims if based on the Florida Administrative Code.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge is rejected.

2. This habeas petition is denied, and the clerk is directed to close the file.

**DONE AND ORDERED** this _27th_ day of March, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge