IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PARRISH A HARRIS,

      Petitioner,

v.                                    CASE NO. 1:04-cv-00022-MP-AK

JAMES CROSBY, JR, et al.,

      Respondents.

_____/

**O R D E R**

      This matter is before the Court on the Mandate of the United States Court of Appeals for the Eleventh Circuit.  In it, the Eleventh Circuit held that the Court did not address all of the claims asserted in petitioner's habeas petition and remanded the case "so that all of petitioner's claims can be addressed and ruled upon."  Doc. 57.  In accordance with the Mandate, the Court hereby addresses all of the claims raised in Petitioner's 28 U.S.C. § 2254 petition.

      In April of 1992, the Petitioner was convicted in the Circuit Court of the Second Judicial Circuit in Leon County, Florida, Case No. R91-2768, of numerous Counts of Armed Robbery and one count of Aggravated Assault. (Exh. B to Doc. 16).  The court sentenced Petitioner to a twenty-year term and a five-year term on the Armed Robbery and Aggravated Assault Offenses, respectively, to be served concurrently. (Exh. B to Doc. 16).

      On November 19, 2000, through the accumulation of gain-time, and pursuant to § 947.1405 of the Florida Statutes, Petitioner's release date advanced to within the relevant time frame to authorize his release from the Florida Department of Corrections' custody to Conditional Release supervision.  His Conditional Release was to last until July 26, 2011. (Exh.

D).

It would not last that long. On or about July 3, 2001, Petitioner's Conditional Release

Officer prepared a violation report. The report indicated that Petitioner violated Condition 7 of

supervision by being arrested for committing an Aggravated Battery upon a Pregnant Woman.

(Exh. E to Doc. 16). The violation report was based on the Vero Beach Police Department's

offense incident report dated July 1, 2001, based on a response to a "911" call. The report

consisted of a police investigation into the victim's allegations of assault, a victim's statement,

the investigating officer's observations, an arrest affidavit, and a narrative sheet dated July 3,

2001.

The narrative sheet, written by Officer Charles McFarland, stated as follows:

On 07/01/2001 at approximately 0150 hours, Cpl Nelson and I responded at 1400
A1A in reference to Battery PRST. Upon arrival, I met with victim [name
redacted]. [She] was visibly upset and appeared to be crying. [She] advised that
her boyfriend, Parrish Harris, choked her earlier at his uncle's house (566 Dahlia
Ln). [She] advised that she and Harris met at Harris' uncle's house after they got
off work. [She] further advised that they went out to eat at Crusty's around 6:30
p.m. and went back to Harris' uncle's house around 9:00 p.m.

[She] advised that Harris asked for sex and she agreed but was not interested
since she was 4 months pregnant. [She] advised after they started having sex, she
told Harris to stop and that she did not want to continue. [She] advised that
Harris held her down by her arms. [She] advised that she got away from Harris
and put her clothes on to go outside.

As she tried to go outside, Harris grabbed her around the neck bith both hands and
choked her. [She] advised that Harris was very angry and starting saying
threatening things such as "You don't deserve to breed", "Right now I want to kill
you, me, and the baby" while he was choking her. [She] further advised that
when she got away from Harris, he stated, "The only reason you're alive is
because I let you." Harris tried to get her to leave with him to go back to
Tallahassee. [She] advised that she was too scared and left. [She] advised that
she walked around for a while before calling the police.

[She] advised that she and Harris have been together for 2 months and living
together for 1½ months. She advised that they moved to Vero Beach 2 weeks ago

and stayed at the South Beach Motel.  They moved to Sebastion until 6/30/2001 and were to move into Harris' uncle's house.  The unborn child is not Harris' according to [victim].

Red marks and blood blisters were visible around [victim's] neck.

Detective Jim Kelly 684 responded to investigate the possible sexual battery and took over the case.

Cpl. Nelson transported [victim] to the emergency room where they were met by Detective Kelly.

Later at 4:00 a.m. that night, the victim filed a sworn statement, averring the following:

Me and my boyfriend, Parrish Harris had went out to eat at Crusty's.  When we got back, around 8 p.m., I was sitting outside he was inside, he called me in to watch a porno with him; he wanted to have sex on the bed. I said no, I walked out to the living room to go outside.  He was getting aggressive then.  He pulled me down on the floor & took my pants / underwear off during this time.  I'm saying no I don't want to.  When I tried to get up he pulled at my legs/arms & sat me down.  I was not putting up much of an argument for the first few minutes of intercourse then I did again and he pulled my hair and head to the ground and was gripping my wrist very tight.  When I tried to get up he would push me down harder, throw my legs to the side.

I didn't make 100% effort to make him stop I knew it would only be worse.  A couple of minutes later he asked me do I want to stop.  I said yes he let me get up.  I went outside and he wanted to know why I wouldn't have sex with him.  He then got angry and got in my face, yelling at me about how I don't deserve to have a baby, I'm a piece of shit.  He choked me for a few seconds then let go.  He asked me if I knew was pain was?  He said it's fear.  He cont'd to choke me harder/longer.  I couldn't breathe barely in between times.  He was poking at my stomach and saying he wants to kill me, the baby and himself.  I begged him to stop, he said I'm not hurting you then began to head butt me, twist my wrist/arm around and said "this hurts though."

He headlocked me and pulled me inside and cornered me into a corner and choked me more.  Finally, he said "go and leave but you are only alive b/c I let you - do you understand?"  He repeated it again.  Each time he choked me I thought it was the last time I would breathe again.  When he went inside he was saying he's taking me back to Tallahassee.  I didn't want to get in the car w/ him so I ran down the road.  I do not want to press sexual battery charges against him.

Later, in the Arrest Affidavit, Detective Kelly recounted the events described above and also

added:

> Your Affiant observed a vertical scratch on the left side of [victim's] neck which is about ½ inch long. There is a bruise along [her] left jaw line below her ear. She also has a bruise on her right thigh. She said that her neck hurts from soreness.

Detective Kelly also noted in his Narrative Sheet that "Sgt. Koukos photographed the scene and photographed marks and bruises that appeared on the victim."

Despite the previous sworn statements, the victim, on July 7, 2001, submitted a letter to the Office of the State Attorney requesting that the charges be dropped against Petitioner Harris. (Exh. G). In the letter she stated as follows:

> I [victim] being of sound mind hereby request that all charges brought against Parrish Harris (case # 0l-2851) to be dropped. My statement given the night of June 30, 2001 was given under much duress as well as being under the influence of alcchol. My statements made were untrue, and then written up on the police report with other than my words by Detective Kelly (badge # 684) of the Vero Beach police Dept.

> Parrish and I attempted to relocate to Vero Beach on June 14, 2001. We were very low on money, my car had to be left in Tallahassee with transmission problems. Our rent was $200.00 per week. Parrish was taking his medicine approximately every three days to make his medicine last longer. The day of the incident I had slipped on the floor at work, they also had just found out of my pregnancy, and fired me on the spot. I got a ride from a co-worker home that day. Parrish was not too happy with me getting a ride home from a co-worker, but it was the added financial pressure of me being fired from a job that we needed the income from that got us arguing. There was no choking involved as I said in my statement. I didn't say I was raped, but detective Kelly wrote it up that way. That too is an incorrect part of my statement. We did have consensual rough sex that night which was reflected in the statement as being choked, but the choking incident was not true. There was NO rape, there was NO choking, and there was only a heated argument under the influence of alcohol. I feel terrible for exaggerating the story I told and what my incorrect statements has done to Parrish, and I want to set the record straight as to what happened that night. I was mad, hurt, scared, panicked and very angry. We did have an argument but NO domestic violence occurred. I also felt pushed and intimidated by Detective Kelly. I fold him repeatedly that I did not want to press any charges.

On July 24, 2001, the Office of the State Attorney made an independent and the discretionary

determination to file a "No Information." (Exh. H).

Despite this, on or about July 27, 2001, the Parole Commission issued a Warrant for

Retaking Conditional Releasee. (Exh. I). The Warrant charged that Petitioner had,

> Violated Condition 7 by failing to obey all laws, ordinances or statutory
> conditions of Conditional Release in that on or about July 1, 2001, in Indian River
> County, Florida, he did unlawfully and intentionally touch, strike or cause bodily
> harm to [victim], against her will, when he knew or should have known that the
> victim was pregnant.

(Exh. I).

On or about September 6, 2001, the Parole Commission provided Petitioner a copy of the

Florida Parole Commission's Notice of Hearing on Conditional Release Violation, which

represents the official charging document. (Exh. J). The Parole Commission also provided

Notice of Rights at Final Revocation Hearing. (Exh. J). The first document detailed the violation

with which Petitioner was charged, and the latter advised Petitioner of his rights at the final

hearing. The Notice of Rights in the revocation proceeding informed Petitioner that he was

entitled to appear and speak at the hearing, and present documents at the hearing, present

evidence, obtain witnesses, request subpoenas, review and examine evidence prior to the

hearing, and confront and cross-examine witnesses. The Notice further informed Petitioner that

he had a right to be represented by counsel. (Exh. J).

Petitioner retained private counsel, Victoria Bush, and requested a final violation hearing.

Id.; Doc. 16, Ex. K.   She did not request any evidence to be disclosed, however, prior to the

hearing.  The revocation hearing was conducted on November 9, 2001, and November 21, 2001.

Doc. 16, Ex. K. At the hearing, counsel for Petitioner objected to Officer McFarland's testimony

because he had not been listed as a witness, Doc. 17, Ex. B at 97 & 112,1 and she also objected

to photographs taken of the victim because they had not been disclosed prior to the hearing and

because the photographer was not present to authenticate them. Id. at 108.

At the conclusion of the hearing, the Hearing Examiner found Petitioner guilty of the charged violation. Doc. 16, Ex, K. According to the Examiner, his finding was based on a review of the victim's handwritten and videotaped statements and the testimony of the police officers who responded to the 911 call and witnessed the victim's statements, including Officer McFarland. Id. He also noted that Petitioner's attorney had objected to the videotape and to "the use of color photographs taken of the Victim because the photographer...had not been subpoenaed and was not present to properly introduce them." Id. He did not advise the Commission that counsel had also objected to the photographs based on the failure to disclose them to her prior to the hearing, and he made no mention whatsoever of her objection to Officer McFarland's testimony, which, as previously noted, was also based on a failure to disclose.

The Parole Commission issued a Revocation of Conditional Release Order on January 30, 2002. (Exh. L). The Parole Commission issued an Amended Order on July 10, 2002. (Exh. M), and Petitioner filed a state habeas corpus petition. The state circuit court rejected the Petitioner's state habeas petition, stating:

> Having reviewed the above-styled writing filed on or about February 4, 2003, this Court finds the following:
>
> Petitioner has failed to demonstrate an entitlement to relief. The attachments to Petitioner's complaint show that the Parole Commission revoked Petitioner's Conditional Release because of violation(s) found to have been committed by Petitioner. Petitioner has failed to demonstrate that the Commission abused its discretion.
>
> For the foregoing non-exclusive reasons, the petition is **DENIED**.

This decision was upheld on appeal and is final.

In the instant court, Petitioner filed a petition under 28 U.S.C. § 2254, raising claims in

fifteen numbered paragraphs which can be grouped into the following four categories:

> Category 1: The FPC failed to provide Petitioner advance written notice of the introduction of certain photographs of the victim at his conditional release violation hearing. ¶ 1.

> Category 2: The FPC failed to provide Petitioner with advance written notice that Officer McFarland would appear as a witness at his conditional release violation hearing. ¶ 2.

> Category 3: Ex parte communications occurred between the hearing officer and Det. Kelly and Nancy Johnson. ¶ 3.

> Category 4: The hearing officer's summary report excluded Petitioner's and other witnesses' testimonies, omitted reference to a letter, and included various mistakes or false statements. ¶¶ 4-15.

Previously, the Magistrate Judge issued a Report and Recommendation that recommended granting a new hearing for Petitioner, based on perceived violations of his due process rights under Morrissey v. Brewer, 408 U.S. 471 (1972).[1]  In the Report and Recommendation, the Magistrate Judge focused only upon the failure to disclose the photographs ahead of time to the defendant.  Since the Magistrate Judge concluded that this omission was sufficient to render the hearing a violation of due process, the analysis stopped there.

The undersigned rejected the Report and Recommendation, finding that all of the process that is due under cases like Morrissey was provided to Petitioner in this case.  In so ruling, the Court implicitly addressed all four categories of claims.  Unfortunately, however, the Court focused upon only the argument that the photographic evidence and the fact that Officer

---

[1]As an initial matter, the undersigned agrees with the Magistrate Judge that this due process claim is not one which arises purely under state law.  As the Magistrate Judge said, "although Petitioner did not cite the United States Constitution, *Morrissey*, or any other federal case law, he has plainly alleged violations of federal due process, not claims founded merely on state law." Report and Recommendation, Doc.

McFarland would be a witness need be disclosed in advance of the hearing. The Court did not explicitly discuss the other grounds raised by Harris, and so the Eleventh Circuit remanded the case for the undersigned to address all of Harris' claims explicitly. As discussed below, the Court continues to adhere to its view that all the process that is due under <u>Morrissey</u> was provided in this case and will now explain its reasoning with regard to each claim.

<u>Morrissey</u> and its progeny have clearly stated that the parole revocation hearing is not intended to turn into a miniature criminal trial. As the Court wrote in <u>Morrissey</u> itself,

> We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.
>
> * * * *
>
> We emphasize there is no thought to equate this second stage of parole revocation [the final revocation hearing] to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

<u>Id.</u> at 480 and 488-89. The Supreme Court also articulated the ultimate question involved, "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." <u>Id.</u> at 484.

In light of these considerations, <u>Morrissey</u> and its progeny hold that the following minimum requirements of due process must be provided: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be

heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972).

Although the Florida Administrative Code requires disclosure of evidence against a probationer *prior* to the hearing, Morrissey itself, and the majority of the cases interpreting Morrissey, do not so require.  Morrissey simply requires "disclosure to the parolee of evidence against him".  Id.  "Morrissey does not require disclosure to the parolee in writing of the evidence to be used against him" Baker v. Wainwright, 527 F.2d 372, 379 (C.A. 5th Cir. 1976).  At least one Judge of the Eleventh Circuit concludes that a Probationer "had no right to be informed, in advance of the hearing, of the evidence against him." See Gholston v. Jones, 848 F.2d 1156, 1162 n.4 (C.A. 11th Cir. 1988) (Edmondson, J., dissenting; cited for proposition not contradicted by majority opinion - which held that parolee not being told about most crucial piece of evidence until after he waived right to counsel and to present witnesses, did not necessarily violate right to confrontation,  Gholston, at 1161 [maj. op.]).  In support of the assertion that Morrissey does require advance notification, the Magistrate Judge cites: United States v. Taylor, 540 F.2d 1156 (2nd Cir. 1976), In re Love, 520 P.2d 713 (Cal. 1974), and Belk v. Purkett, 15 F.3d 803, (8th Cir. 1994), however, all of these cases deal with instances in which parolees requested the evidence be disclosed to them prior to the hearing ; Petitioner made no such request.

The danger Morrissey intends to avoid is a probationer being sent back to prison without

having any idea what evidence was used to convince the hearing officer to return him to prison. Morrissey, however, was not intended to raise the due process required for a revocation hearing to the same level as that for a criminal trial. This accords with the view that "[the] rule relating to disclosure is simply intended to assure that at the revocation hearing the probationer is confronted with all of the evidence upon which any decision to revoke could be based." Com. v. Quinlan, 380 A.2d 854, 857 (Pa. Super. 1977) (rejecting appellant's argument that Morrissey entitled him to have evidence against him disclosed before revocation hearing). In fact, even courts seeming to indicate a preference for prior disclosure have found that failure to do so does "not give rise to constitutional error." Barton v. Malley, 626, F.2d 151, 158 (C.A. 10th Cir. 1980) (no constitutional error where evidence was not disclosed to parolee prior to hearing).

The Court finds that Morrissey and its progeny do not require the evidence to be used at a revocation hearing to be disclosed prior to the hearing. Therefore, the state decisions in this case with regard to the first and second claim of Petitioner cannot be deemed "contrary to, or ... an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

Also, as the Magistrate Judge points out, a habeas petition grounded on issues of state law alone provides no basis for federal habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989). Thus, the fact that the Florida Administrative Code may require more process during revocation hearings than Morrissey is of no import to the instant lawsuit; Petitioner would be asserting solely state law claims if based on the Florida Administrative Code.

With regard to the ex parte communication claims in paragraph 3 of the Petition, the communication with Detective Kelly was described as follows in the hearing officer's report. Counsel for the Petitioner asked Detective Kelly if he noticed any red or blood-shot eyes that would have indicated strangulation. Detective Kelly answered that he did not. After reporting this, the hearing officer stated,

> This phenomenon, called 'petechia', was subsequently discussed with Detective Kelly outside of the hearing room. It is his understanding that petechia only occurs when strangulation is severe enough to render a victim unconscious or dead.

With regard to the ex parte communications involving the person that Petitioner calls "Nancy Johnson", the Court assumes he means Nancy Olsen Johansen, his previous parole supervisor. In his state habeas petition he complains of "an interoffice communication and phone conversation with petitioner's previous Parole Supervisor, Nancy Johanson, regarding petitioner's character." Doc. 16, exhibit K. The court finds nothing wrong with a hearing officer consulting the probation officer who supervised Petitioner. Additionally, the information received was summarized by the hearing officer as follows

> During a telephone conversation with this Hearing Officer prior to the hearing, Mrs. Johansen stated that she also had no personal knowledge of the offense and very little knowledge of the Releasee, who had only recently transferred under her caseload as well.

Petitioner provides no other explanation for an ex parte communication involving a Nancy Johnson or Johansen. Thus even if this contact was an impermissible ex parte contact, it was harmless error.

More importantly, as discussed above, the Supreme Court and Eleventh Circuit instruct that a parole revocation hearing is not to be turned into a miniature criminal trial. Instead, all that is intended is "an informal hearing structured to assure that the finding of a parole violation

will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."  Morrissey, 408 U.S. at 484.  Here, the Court finds that the discussion with Detective Kelly and Parole Officer Johansen were appropriate as part of the flexible, informal hearing envisioned by the Morrissey Court.  Nothing about either interaction casts doubt upon whether the finding of a parole violation was based on "verified facts" or whether the parole board had sufficient knowledge of the parolee's behavior to exercise its discretion in revoking parole.  Accordingly, these conversations do not support federal habeas relief.

Finally, the Petitioner objects to various choices made by the hearing officer as to what to put in his summary report and what to leave out.  He also claims that it contained various errors, such as whether the officer read from his report or not, whether the testimony of one witness was properly paraphrased.  Having reviewed all of the evidentiary choices raised in paragraphs 4 through 15 of the habeas petition, the Court finds that none them individually nor all of them collectively undermine the assurance that "the finding of a parole violation [was] based on verified facts and that the exercise of discretion [was] informed by an accurate knowledge of the parolee's behavior."

Simply put, petitioner was given notice of the hearing, an opportunity to confront the evidence and witnesses against him, and was represented by counsel.  In other words, he received "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."   Thus, he received all of the process that was due in this

case under <u>Morrissey</u>, and therefore, federal habeas relief is not proper in this case.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The habeas petition, Doc. 1, is hereby denied on all claims.

**DONE AND ORDERED** this _7th_ day of April, 2010

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge